IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

WILLIAM ESCALARA,

                              Plaintiff,

        v.                                        Civil Action No.
                                                  9:04-CV-0983 (FJS/DEP)


T. CHARWAND, C.O., *et al.*,

                              Defendants.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

WILLIAM ESCALARA, *Pro Se*


FOR DEFENDANTS:

HON. ANDREW M. CUOMO                  CHRISTOPHER HALL, ESQ.
Office of the Attorney General        Assistant Attorney General
State of New York
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff William Escalera, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this proceeding

pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights.  In an amended complaint which is both difficult to follow and couched in vague and conclusory terms, plaintiff appears to assert claims of First Amendment free speech and procedural due process deprivations arising from the issuance of misbehavior reports concerning his conduct as a prison inmate, implicating matters which include his verbal communications with fellow inmates, determined by prison officials to violate policies regarding such interaction, and the disciplinary proceedings which followed.[1]

Currently pending before the court is a motion filed by those defendants who to date have appeared in the action, seeking the entry of summary judgment dismissing plaintiff's claims as lacking in merit. Having carefully reviewed the record in the light of defendants' motion, without the benefit of any opposing submissions by the plaintiff, I conclude no reasonable factfinder could determine that plaintiff's constitutional rights have been abridged, and therefore recommend that defendants' motion be granted.

I.     BACKGROUND

---

[1]     Plaintiff's complaint also purports to assert an equal protection denial cause of action, although the particulars of that claim are not well-defined.

2

Plaintiff is a prison inmate who has been entrusted to the custody of the New York State Department of Correctional Services (the "DOCS"). *See generally*, Amended Complaint (Dkt. No. 12); *see also* Defendants' Exhibits (Dkt. No. 59-4) Exh. A (Transcript of Plaintiff's Deposition, held on May 23, 2006) at 11.  At the times relevant to his claims plaintiff was designated to the Clinton Correctional Facility ("Clinton"), categorized by the DOCS as a maximum security prison.  Defendants' Exhibits (Dkt. No. 59-4) Exh. A at 10-11.  At Clinton, plaintiff worked as a maintenance recycling porter and was permitted to sleep in a cubicle located within a dormitory in the Clinton Annex under conditions more akin to those existing in a medium security prison.  *Id.* at 9-10.

Between the time of his transfer into Clinton in May of 2004, *see* Defendants' Exhibits (Dkt. No. 59-4) Exh. A at 11, and the end of 2004 the plaintiff, who as a prison inmate has amassed a lengthy disciplinary record, was the recipient of several misbehavior reports accusing him of violating various prison disciplinary rules.  Defendants' Exhibits (Dkt. No. 59-5) Exh. D.  The particulars of those misbehavior reports can be summarized as follows:

| Date of Incident | Violations Alleged |
|---|---|
| 6/14/04 | Creating a disturbance (Rule 104.13) and violation of refusal to obey a direct order (Rule 106.10) |
| 6/24/04 | Property in an unauthorized location (Rule 113.22) |
| 6/26/04 | Refusal to obey a hearing disposition (Rule 181.10) |
| 6/26/04 | Interference with prison officials (Rule 107.10), creating a disturbance (Rule 104.13), making a threat (Rule 102.10) and a messhall violation (Rule 124.16) |
| 8/11/04 | Creating a disturbance (Rule 104.13) and interference with prison officials (Rule 107.10) |
| 9/23/04 | Loss/damage to property (Rule 116.10), Creating a disturbance (Rule 104.13), refusal to obey an order (Rule 106.10) and interference with prison officials (Rule 107.10) |
| 10/27/04 | Creating a disturbance (Rule 104.13) |
| 12/15/04 | Interference with prison officials (Rule 107.10), refusal to obey a direct order (Rule 106.10), delay in count (Rule 112.20) and count violation (Rule 112.21) |
| 12/26/04 | Movement violation (Rule 109.12) |

*Id.* Tier II disciplinary hearings were conducted at various times in

4

connection with a majority of those reports, in each instance resulting in a

finding of guilt on one or more of the charged violations and the imposition

of sanctions which generally included loss of recreation, package,

commissary and/or telephone privileges of varying durations and, in some

instances, keeplock confinement extending up to thirty days on one

occasion.[2]  *Id.*  Plaintiff appealed each of the adverse hearing

determinations and resulting disciplinary penalties to the facility

superintendent, defendant Artus, who on each occasion affirmed the

hearing officer's decision.  Amended Complaint (Dkt. No. 12) at 4; *see*

*also* Defendants' Exhibits (Dkt. No. 59-4) Exh. A at 50.

At one point plaintiff attempted to speak with his prison counselor,

defendant Joswick, regarding the frequency with which misbehavior

reports were being administered to him by prison officials.  Amended

Complaint (Dkt. No. 12) at 4; Defendants' Exhibits (Dkt. No. 59-4) Exh. A

at 59-60.  In apparent response to Escalara's persistence, defendant

---

[2]      The DOCS conducts three types of inmate disciplinary hearings.  Tier I
hearings address the least serious infractions, and can result in minor punishments
such as the loss of recreation privileges.  Tier II hearings involve more serious
infractions, and can result in penalties which include confinement for a period of time in
the Special Housing Unit (SHU).  Tier III hearings concern the most serious violations,
and could result in unlimited SHU confinement and the loss of "good time" credits.  *See*
*Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct.
246 (1998).

Joswick advised that he was not plaintiff's "pen pal" and threatened disciplinary action if plaintiff continued in his efforts to communicate with him.  Amended Complaint (Dkt. No. 12) at 2; Defendants' Exhibits (Dkt. No. 59-4) Exh. A at 60.  The situation between the two was alleviated, however, when plaintiff was assigned a new counselor to replace defendant Joswick, therefore making it unnecessary for prison officials to take the threatened disciplinary measures. Defendants' Exhibits (Dkt. No. 59-4) Exh. A at 61.

II.   <u>BACKGROUND</u>

Plaintiff commenced this action on August 19, 2004 and, at the direction of the court based upon perceived deficiencies in plaintiff's initial pleading, *see* Dkt. No. 6, submitted an amended complaint on December 27, 2004, the filing of which was authorized by the court following a review of the new pleading.  Dkt. Nos. 12, 14.  Named as defendants in plaintiff's amended complaint are Clinton Superintendent Artus; Mr. Douglas, a dietician at the facility; Mr. Joswick, plaintiff's former corrections counselor; Corrections Lieutenants Baldwin and Armitage; and Corrections Officers T. Charland, West, W. Brown, R. Caron, C. Lambard, L. Favro, and J.

Roch.[3]  In his complaint, plaintiff claims violation of his rights of free speech and association, deprivation of procedural due process, and the denial of equal protection, and seeks recovery of compensatory and punitive damages.  Dkt. No. 12.

On August 23, 2005 an answer was filed by the New York State Attorney General, acting on behalf of various of the defendants named by the plaintiff, including Thomas Charland, Jeffrey Joswick, Dale Artus, William Brown, and Randy Caron.  Dkt. No. 31.  In that answer defendants have generally denied plaintiff's allegations, additionally asserting various affirmative defenses.  *See id.*  A second answer was subsequently filed, also by the New York State Attorney General, on behalf of defendant Michael Douglas mirroring the earlier filed answer.  Dkt. No. 52.  To date, defendants Corrections Captain West, Corrections Lieutenant Baldwin, C. Lambard, and J. Roch have neither been served nor otherwise appeared in the action.

On January 30, 2007, following the close of discovery, the defendants who thus far have appeared in the action moved seeking the entry of summary judgment dismissing plaintiff's complaint in its entirety,

---

[3]      The clerk is directed to amend the docket to reflect the correct spelling of the last names of defendants Charland and Armitage.

7

as a matter of law.  Dkt. No. 59.  In their motion, defendants assert that

the evidence in the record fails to support plaintiff's claimed constitutional

deprivations.  *Id.*  Despite inclusion within defendants' motion of language

properly advising Escalera of the significance of the motion and the

potential consequences of any failure on his part to properly respond as

required, *see* Dkt. No. 59, plaintiff has not filed any papers in opposition to

the pending motion, which is now ripe for determination and has been

referred to me for the issuance of a report and recommendation, pursuant

to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Status of Unserved Defendants

    Despite the filing on December 27, 2004 of plaintiff's amended

complaint and the clerk's issuance on March 28, 2005 of summonses, four

of the named defendants, including Captain West, Corrections Officer C.

Lambard, Lieutenant Baldwin, and Corrections Officer J. Roch, have

neither been served nor otherwise appeared in the action.[4]

---

    [4]    The summonses issued to Captain West and C. Lambard were returned
in July of 2005, unexecuted.  Dkt. Nos. 20, 21.  The record is unclear as to the status
of efforts to serve the remaining two defendants, Corrections Lieutenant Baldwin and
Corrections Officer J. Roch.

Rule 4(m) of the Federal Rules of Civil Procedure authorizes dismissal of a plaintiff's claims against a defendant where a summons and complaint is not served upon that party within 120 days after filing of the complaint, absent a showing of good cause.[5]   Fed. R. Civ. P. 4(m); *Shuster v. Nassau Cty.,* No. 96 Civ. 3635, 1999 WL 9847, at *1 (S.D.N.Y. Jan. 11, 1999) (Rule 4(m) authorizes dismissal where no service within 120 days after filing of the complaint); *Romand v. Zimmerman,* 881 F. Supp. 806, 809 (N.D.N.Y. 1995) (McAvoy, C.J.) (120-day period for service of a summons and complaint by a plaintiff under Fed. R. Civ. P. 4(m) applies to *pro se* plaintiffs as well as those represented by counsel). Inasmuch as the four missing defendants have not been served or otherwise appeared in the action within the appropriate time period, this court has never acquired jurisdiction over them, and the complaint should be dismissed as against those defendants, without prejudice.  *See, e.g., Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 709 F. Supp. 1279, 1282 (S.D.N.Y. 1989) (citing *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444-45, 66 S. Ct. 242, 245-46 (1946)) (court

---

[5]     That period is further restricted by the local rules of this court, which require that service be effected within sixty days.  *See* Northern District of New York Local Rule § 4.1(b).

lacks jurisdiction until defendants properly served with summons and complaint).

B.    Plaintiff's Failure to Oppose Defendants' Motion

Before turning to the merits of plaintiff's claims, a threshold issue to be addressed is the legal significance, if any, of his failure to oppose defendants' summary judgment motion, and specifically whether that failure automatically entitles defendants to dismissal of plaintiff's complaint, based upon their motion.

This court's rules provide that

> [w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

N.D.N.Y.L.R. 7.1(b)(3).  While *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, *see Jemzura v. Public Serv. Comm'n*, 961 F. Supp. 406, 415 (N.D.N.Y. 1997) (McAvoy, C.J.)), the failure of such a plaintiff to oppose a summary judgment motion does not preclude the court from deciding the motion.  *Robinson v. Delgado*, No. 96-CV-169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998)

(Pooler, J. & Hurd, M.J.); *Cotto v. Senkowski*, No. 95-CV-1733, 1997 WL 665551, at *1 (N.D.N.Y. Oct. 23, 1997) (Pooler, J. & Hurd, M.J.); *Wilmer v. Torian*, 980 F. Supp. 106, 106-07 (N.D.N.Y. 1997) (Pooler, J. & Hurd, M.J.).  As can be seen by the face of Local Rule 7.1(b)(3), however, before summary judgment can be granted under such circumstances the court must review the motion to determine whether it is facially meritorious.  *See Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 231-32 (N.D.N.Y. 2000) (Scullin, C.J.); *Leach v. Dufrain*, 103 F. Supp. 2d 542, 545-46 (N.D.N.Y. 2000) (Kahn, J.).

While a plaintiff's failure to properly oppose a defendant's motion does not assure that the motion, however lacking in merit, will be granted, that failure is not without consequences.  By opting not to submit papers in opposition to their motion, plaintiff has left the facts set forth in defendants' Local Rule 7.1(a)(3) Statement unchallenged.  Courts in this district have routinely invoked Local Rule 7.1(a)(3) and its predecessor, Local Rule 7.1(f), deeming facts set forth in a statement of material facts not in dispute to have been admitted based upon an opposing party's failure to properly respond to that statement.[6]  *See*, *e.g.*, *Elgamil v. Syracuse Univ.*,

---

[6]     According to Local Rule 7.1(a)(3), "any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the

11

No. 99-CV-611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)). I recommend that the court follow this well-established practice and, notwithstanding plaintiff's *pro se* status, accept defendants' assertion of facts as set forth in their Local Rule 7.1(a)(3) Statement as uncontroverted, in light of plaintiff's failure to respond to that statement, when reviewing defendants' motion for facial sufficiency.

C.    Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986);

_____

opposing party." *See* N.D.N.Y.L.R. 7.1(a)(3).

*Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.

In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

D.     Plaintiff's First Amendment Claim

The essence of plaintiff's First Amendment claim appears to be that when engaged in the behavior giving rise to the issuance to him of misbehavior reports, including laughing at corrections officers and talking loudly across a cell block to fellow inmates, in violation of well known and

understood directives prohibiting such actions, his conduct was protected under the First Amendment and, accordingly, when disciplined for those actions his constitutional rights were abridged.  Defendants assert that the record fails to support a First Amendment deprivation, as a matter of law.

The First Amendment to the United States Constitution provides, in relevant part, that "Congress shall make no law. . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble . . . ."  U.S. Const. amend. I.  The protections afforded by the First Amendment, like many other constitutional guarantees, are not necessarily forfeited by a person upon his or her entry into prison; many rights conferred by the Constitution, however, are by definition extinguished, or in some cases give way to legitimate, counterveiling penological concerns, upon incarceration.  *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004).  As the Supreme Court has noted, "[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration."  *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125, 97 S. Ct. 2532, 2537-38 (1977).

While the point of demarcation is not always readily discernable, it is

15

clear that prison inmates enjoy some measure of First Amendment

protection, yet forfeit those free speech rights which are incompatible with

legitimate penological considerations.  *See Pell v. Procunier*, 417 U.S.

812, 822 , 94 S. Ct. 2800, 2804 (1974).  As the Supreme Court has

observed,

> [a] prison inmate retains those First Amendment
> rights that are not inconsistent with his [or her]
> status as a prisoner or with the legitimate
> penological objectives of the corrections system.
> Thus, challenges to prison restrictions that are
> asserted to inhibit First Amendment interests must
> be analyzed in terms of the legitimate policies and
> goals of the corrections system, to whose custody
> and care the prisoner has been committed in
> accordance with due process of law.

*Id.*

Thus, for example, prison officials may not deter the right of a prison

inmate to voice complaints regarding prison conditions through

established processes by taking adverse actions which are intended, or

which have the affect, of chilling or abridging such rights.  *See Gill v.*

*Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004).  Conversely, and at the

other end of the spectrum, prison officials are empowered to control the

use of threatening and abusive language by inmates.  *Jermosen v.*

*Coughlin,* 878 F. Supp. 444, 450-51 (N.D.N.Y. 1995) (McAvoy, C.J.).  The

16

right of officials to control inmate speech and other behavior through the imposition of measures reasonably calculated to preserve the safety and security of a prison facility, its employees and inmates, is well established, even though such measures may impinge upon an inmate's ability to speak freely or to associate with others. *See Auleta v. LaFrance,* 233 F. Supp. 2d 396, 399 (N.D.N.Y. 2002) (Kahn, D.J.) (noting that restrictions on inmate communication are constitutional if reasonably related to legitimate penological interests) (citing *Turner v. Safley,* 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987)).

In this instance plaintiff does not allege, nor does the record disclose, that plaintiff was engaged in protected activity when disciplined for violating prison rules.  Typical of plaintiff's claims, by contrast, is the contention that he was issued a misbehavior report by Corrections Officer Charland for talking loudly within the prison dormitory, despite his awareness that the officer was known to be particularly strict, and that he prohibited such potentially disruptive communications.  *See* Defendants' Exhibits (Dkt. No. 59-4) Exh. A at 10-11.

Clearly, policies of the type implicated by defendant Charland's response to plaintiff's actions are reasonably related to legitimate

17

penological concerns, and thus do not give rise to the constitutional claims for deprivation of the First Amendment right of free speech or association. *Cf. Percy v. Jabe,* 823 F. Supp. 445, 448 (E.D. Mich. 1993) (noting that prison officials should be afforded wide latitude in imposing visitation restrictions at prison in light of, *inter alia*, perceived threats to security and order at the institution).  It would be novel indeed for prison inmates to assert a First Amendment right to speak freely and communicate with other inmates and prison officials, without restriction based upon legitimate penological concerns.  Plaintiff has cited no case authority, nor is the court aware of any, which stands for such a broad proposition and supports an open-ended, unlimited right of prison inmates to speak freely within the prison setting, however disruptive the conduct might be.

Because plaintiff has failed to allege and prove that he was engaged in constitutionally protected activity when disciplined by prison officials, and finding that defendants' actions in disciplining him were reasonably related to legitimate penological concerns, I recommend a finding that his First Amendment claims are deficient as a matter of law.

E.    Plaintiff's Procedural Due Process Claims

Intertwined with his First Amendment cause of action is plaintiff's

18

claim that during the course of issuance of misbehavior reports and the

ensuing disciplinary proceedings, his procedural due process rights were

abridged.  To successfully state a claim under 42 U.S.C. § 1983 for denial

of due process arising out of a disciplinary hearing, a plaintiff must show

that he or she both (1) possessed an actual liberty interest, and (2) was

deprived of that interest without being afforded sufficient process.  *See*

*Tellier v. Fields,* 260 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted);

*Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir.), *cert. denied*, 525 U.S.

907, 119 S. Ct. 246 (1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d

Cir. 1996).  In their motion the defendants, while not conceding any lack of

sufficient due process, assert that plaintiff cannot establish the deprivation

of a constitutionally cognizable liberty interest.[7]

In *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995), the

---

[7]     The procedural safeguards to which a prison inmate is entitled before
being deprived of a constitutionally cognizable liberty interest are well-established, the
contours of the requisite protections having been articulated in *Wolff v. McDonnell*, 418
U.S. 539, 564-67, 94 S. Ct. 2963, 2978-80 (1974).  Under *Wolff*, the constitutionally
mandated due process requirements, include 1) written notice of the charges; 2) the
opportunity to appear at a disciplinary hearing and present witnesses and evidence,
subject to legitimate safety and penological concerns; 3) a written statement by the
hearing officer explaining his or her decision and the reasons for the action being
taken; and 4) in some circumstances, the right to assistance in preparing a defense.
*Wolff*, 418 U.S. at 564-67, 94 S. Ct. at 2978-80; *see also Eng v. Coughlin*, 858 F.2d
889, 897-98 (2d Cir. 1988).  Plaintiff's complaint does not elaborate on his claim that
defendants failed to observe these guaranteed safeguards in connection with his
various disciplinary proceedings.

United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 483-84, 115 S. Ct. at 2300; *Tellier*, 280 F.3d at 80; *Hynes*, 143 F.3d at 658.  Since the prevailing view is that by its regulatory scheme New York State has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor, *see, e.g., LaBounty v. Coombe*, No. 95 CIV 2617, 2001 WL 1658245, at *6 (S.D.N.Y. Dec. 26, 2001); *Alvarez v. Coughlin,* No. 94-CV-985, 2001 WL 118598, at *6 (N.D.N.Y. Feb. 6, 2001) (Kahn, J.), I must find that the conditions of plaintiff's disciplinary confinement as alleged do not rise to the level of an atypical and significant hardship under *Sandin* in order to recommend that defendants' motion be granted.

Atypicality in a *Sandin* inquiry is normally a question of law.[8]  *Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner*, 197

---

[8]       In cases where there is factual dispute concerning the conditions or duration of confinement, however, it may nonetheless be appropriate to submit those disputes to a jury for resolution.  *Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir. 1999).

F.3d 578, 585 (2d Cir. 1999).   When determining whether a plaintiff possesses a liberty interest, district courts must examine the specific circumstances of confinement, including analysis of both the length and conditions of confinement.  *See Sealey,* 197 F.3d at 586; *Arce v. Walker*, 139 F.3d 329, 335-36 (2d Cir. 1998); *Brooks v. DiFasi*, 112 F.3d 46, 48-49 (2d Cir. 1997).  In cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions, however, a detailed explanation of this analysis is not necessary.[9]  *Hynes*, 143 F.3d at 658; *Arce*, 139 F.3d at 336.

Most of the disciplinary charges against the plaintiff in 2004, virtually all lodged as Tier II level violations, resulted in only modest disciplinary sanctions by constitutional standards.  On one occasion plaintiff was sentenced to keeplock confinement for a period of thirty days, receiving shorter keeplock confinements of ten or fifteen days or even more modest

---

[9]     While not the only factor to be considered, the duration of a disciplinary keeplock confinement remains significant under *Sandin.  Colon*, 215 F.3d at 231. Specifically, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin*, *see id.* at 232 n.5, the Second Circuit generally takes the position that SHU confinement under ordinary conditions of more than 305 days rises to the level of atypicality, whereas normal SHU confinement of 101 days or less does not.  *Id.* at 231-32 (305 days of SHU confinement constitutes an atypical and sufficient departure).  In fact, in *Colon v. Howard* a Second Circuit panel split markedly on whether or not adoption of a 180-day "bright line" test for examining SHU confinement would be appropriate and helpful in resolving these types of cases. *See id.* at 232-34 (Newman, C.J.), 235-37 (Walker, C.J. and Sack, C.J., concurring in part).

restrictions on certain other occasions.[10]  Plaintiff's keeplock confinement stemming from the August 11, 2004 and September 23, 2004 misbehavior reports were served in his dormitory cubicle, and plaintiff was permitted to talk with other inmates and to maintain his prison employment during that period.  Defendants' Exhibits (Dkt. No. 59-4) Exh. A at 11-12, 18-19, 31-32.  Similarly, the keeplock confinement sentences imposed as a result of the June 26, 2004 misbehavior reports were also served by the plaintiff within his dormitory cubicle, while maintaining his prison employment.  *Id.* at 37, 46.

Conspicuously absent from either plaintiff's amended complaint or the record now before the court is any evidence establishing that the defendants deprived Escalera of any constitutionally significant liberty interest by their actions.  This marked deficiency warrants summary

---

[10]      Keeplock is a form of confinement restricting an inmate to his or her cell, separating the inmate from others, and depriving him or her of participation in normal prison activities.  *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); *Warburton v. Goord*, 14 F. Supp. 2d 289, 293 (W.D.N.Y. 1998) (citing *Gittens*); *Tinsley v. Greene*, No. 95-CV-1765, 1997 WL 160124, at *2 n.2 (N.D.N.Y. Mar. 31, 1997) (Pooler, D.J. & Homer, M.J.) (citing, *inter alia*, *Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995)).  Inmate conditions while keeplocked are substantially the same as in the general population.  *Lee v. Coughlin*, 26 F. Supp. 2d 615, 628 (S.D.N.Y. 1998).  An inmate is confined to his or her general population cell for twenty-three hours a day, with one hour for exercise.  *Id.*  Inmates can leave their cells for showers, visits, medical exams and counseling.  *Id.*  Inmates can have cell study, books and periodicals.  *Id.*  The main difference between keeplock and the general population is that keeplocked inmates do not leave their cell for out-of-cell programs, and are usually allowed less time out of their cells on the weekends.  *Id.*

dismissal of plaintiff's due process claims, as a matter of law, without the need to examine the sufficiency of the protections afforded to him in connection with those misbehavior reports.

     F.    Equal Protection

Plaintiff's amended complaint also asserts a claim for denial of equal protection.  Though this is far from clear, plaintiff's equal protection claim appears to be limited to defendant Joswick, his former prison counselor. Defendants also seek dismissal of this claim as lacking in merit.

The Equal Protection Clause directs state actors to treat similarly situated people alike.  *See City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985).  To prove a violation of the Equal Protection Clause, a plaintiff must demonstrate that he or she was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class.  *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.1995) (citing, *inter alia*, *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767 (1987)).  The plaintiff must also show that the disparity in treatment "cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not

reasonably related to [any] legitimate penological interests." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225, 121 S. Ct. 1475 (2001) (internal quotation marks omitted)).

Nothing either contained within plaintiff's amended complaint, or otherwise disclosed in the record, reflects any disparity in treatment by defendant Joswick, a corrections counselor, of the plaintiff and other inmates based upon plaintiff's inclusion in an identifiable or suspect class, nor does the record suggest that if such disparate treatment occurred, it was motivated by some other invidious, prohibited discrimination.  Under these circumstances plaintiff's equal protection claim fails, as a matter of law, and is subject to dismissal.  *See*, *e.g.*, *Pena v. Racore*, No. 95-CV-5307, 2001 WL 262986, at *4 (E.D.N.Y. Mar. 14, 2001) (rejecting plaintiff's equal protection claim where he alleged only a difference in treatment and failed to suggest that defendants' actions demonstrated intentional and arbitrary discrimination).

IV.    SUMMARY AND RECOMMENDATION

Plaintiff's amended complaint, drafted in exceedingly conclusory terms and bereft of factual allegations, alleges deprivation of his right to free speech under the First Amendment, his right to procedural due

24

process, and his right to equal protection of the law.  Having carefully

reviewed the record now before the court I am unable to discern any

triable, genuinely disputed issue of material fact, and conclude that no

reasonable factfinder could determine, based upon the record, that

plaintiff's constitutionally rights have been abridged.  Accordingly,

it is hereby

RECOMMENDED that defendants' motion for summary judgment

dismissing plaintiff's complaint (Dkt. No. 59) be GRANTED, and that

plaintiff's complaint be dismissed in all respects, without prejudice as to

defendants West, C. Lambard, Baldwin, and J. Roch, but otherwise with

prejudice.

NOTICE:  pursuant to 28 U.S.C. § 636(b)(1), the parties have ten

(10) days within which to file written objections to the foregoing report-

recommendation.  Any objections shall be filed with the clerk of the court.

FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL

PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

25

court's local rules.

Dated:      February 19, 2008
            Syracuse, NY


David E. Peebles
U.S. Magistrate Judge